UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ELIZABETH JAMES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-10306-IT |
| | * | |
| ALLY FINANCIAL, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

July 5, 2023

TALWANI, D.J.

Plaintiff Elizabeth James, proceeding *pro se*, brings claims against Defendant Ally

Financial, Inc. ("Ally") related to the repossession of her car. See Am. Compl. 2-9 [Doc. No.

51].[1] Now pending before the court are James and Ally's cross-motions for summary judgment,

see James Mot. for Summary Judgment ("James MSJ") [Doc. No. 76] and James Supplement

[Doc. No. 87]; Ally Mot. for Summary Judgment ("Ally MSJ") [Doc. No. 91], and additional

motions filed by James, see Mot. to Deny Further Motions [Doc. No. 88], Mot. to Strike [Doc.

No. 94], Mot. for Default Judgment [Doc. No. 95], and Mot. to Dismiss with Prejudice in Favor

of the Plaintiff for Fraud, Perjury, and Coercion by Counsel for Ally Financial [Doc. No. 96].

For the following reasons, Ally's Motion for Summary Judgment [Doc. No. 91] is GRANTED

IN PART and DENIED IN PART and James's Motions [Docs. No. 76, 88, 94, 95, 96] are

DENIED. The remaining state law claims are remanded to the Wareham District Court for

further proceedings.

---

[1] In 2017, when she purchased the vehicle, Plaintiff was known as Elizabeth Lawless.

## I.    Procedural Background

James initiated this action in state district court on October 29, 2021. State Court Record 17 [Doc. No. 7]. On February 23, 2022, after receiving notice of the federal claim under the Fair Debt Collection Practices Act, Ally Financial removed the case based on federal question jurisdiction. Not. of Removal ¶¶ 8-12 [Doc. No. 1].

On September 8, 2022, James filed her Amended Complaint [Doc. No. 51]. The Amended Complaint [Doc. No. 51] seeks $1,368,500 in damages for the repossession of James's car and the events surrounding the repossession, including alleged double-charges, a failure to provide an accounting, and false representations.[2]

The parties engaged in extensive motion practice and limited discovery (both recounted below as relevant here), and on June 13, 2023, the court held a hearing on the pending motions. See Elec. Clerk's Notes [Doc. No. 104].

## II.   Background

On May 5, 2017, James entered into a Retail Installment Sale Contract ("RISC") with Prime Infiniti for $17,961.25 to finance the purchase of a 2012 Jeep Liberty. Garrett Decl. ¶ 8 [Doc. No. 89]; Garrett Decl. Ex. 1 (copy of signed RISC) [Doc. No. 89-1]. James's daughter, Jessica Lawless, was listed on the RISC as a "co-buyer." Garrett Decl. Ex. 1 [Doc. No. 89-1]. Prime Infiniti assigned the RISC to Ally the same day. Garrett Decl. ¶ 12 [Doc. No. 89].

---

[2] On April 14, 2023, James filed a document entitled "Civil Claim" [Doc. No. 101]. To the extent that James intended to file a second amended complaint, the document is not properly before the court where James has already amended once and the document was filed more than 21 days after Ally filed its Answer [Doc. No. 55] pursuant to Fed. R. Civ. P. 15(a)(1)(B), after the May 31, 2022 deadline for motions to amend as set by the Scheduling Order [Doc. No. 24], after the close of discovery, and without leave of court pursuant to Fed. R. Civ. P. 15(a)(2).

The RISC contained various notices, including that: (1) the buyer had the right to "redeem the property if repossessed for a default;" (2) the buyer may prepay all or part of the charges, (3) late payments were subject to a late charge, (4) the seller may demand full payment of the RISC after notice and an opportunity to cure in the case of material default, (5) the seller may repossess the vehicle, by either consent or court order, after notice and opportunity to cure the default, and (6) once the vehicle is repossessed, the buyer may pay to redeem the vehicle, or the seller would sell the vehicle after written notice of sale. Garrett Decl. Ex. 1 [Doc. No. 89-1].

The payment schedule consisted of 72 monthly payments beginning on June 4, 2017. Id. (identifying monthly payment amount as $319.32); Garret Decl. Ex. 2 (Ally's Payment History for the Account) [Doc. No. 89-2] (identifying scheduled payment amount as $317.11).[3] On June 2, 2017, James made the first payment of $318. On June 26, 2017, James paid $3,176, which covered her scheduled payments due through April 2018. Id. James nonetheless continued making payments of $318 per month for July, August, September, and October 2017, covering her scheduled payments through August 2018. Id. On February 14, 2018, March 17, 2018, and April 14, 2018, James received email notices from Bank of America that there was a new bill from Ally Financial for $316.22 due on September 4, 2018. James Supp. Ex. IX [Doc. No. 87-10], Ex. X [Doc. No. 87-11], Ex. XI [Doc. No. 87-12].

---

[3] Ally's corporate representative states that Exhibit 2 [Doc. No. 89-2] is a true and correct copy of the Payment History for James and Lawless's account ending in 4851 for the period of June 4, 2017, to February 4, 2020. Garrett Decl. ¶ 13 [Doc. No. 89]. In addition to listing the original outstanding balance and the scheduled payment amounts, the Payment History shows, inter alia, as to each date a payment was due, the amount due towards the scheduled payment after payments were credited, the date of each payment, and whether the payment was paid more than 30, 60, or 90 days after it was due. Garrett Decl. Ex. 2 [Doc. No. 89-2]. The Payment History also reflects the total amount paid with each payment and how much of the amount was credited towards the total balance due and how much was listed as "Finance Paid." Finally, the Payment History reflects whether a $5 late fee was assessed. Id.

James made payments totaling $633.33 in September, November, and December 2018. Garrett Decl. Ex. 2 [Doc. No. 89-2]. Each of these payments was late but Ally's records reflect that James was granted extensions and that Ally waived the $5.00 late charge each month. Id. Ally nonetheless penalized James by not crediting any of the $633.33 paid against the total balance due and instead booking these payments as "Finance Paid." Id. Nothing in the record explains Ally's calculation of the "Finance Paid" amounts.

James missed the scheduled payments for January and February 2019 and made payments of $634.22 on April 5, 2019, $200 on May 4, 2019, and $300 on May 5, 2019. Id. Again, Ally charged all amounts to "Finance Paid" and did not credit any amount against the total balance due. Id.

Ally states that it sent James notices on February 17, 2019, April 17, 2019, and May 19, 2019, entitled "Rights of Defaulting Buyer Under the Massachusetts Motor Vehicle and Retail Installment Sales Act," and that each notice stated the amount James was required to pay to cure the default, the deadline by which she needed to cure the default, and the consequences for not curing, including repossession. Garrett Decl. ¶¶ 20, 24, 26; see Garrett Decl. Exs. 4, 5, 6 [Doc. Nos. 89-4, 89-5, 89-6]. James states that she did not receive any such notices. James Aff. [Doc. No. 94-1].

On July 4, 2019, James paid $769.33, of which $213.10 was charged as "Finance Paid" and $556.23 was credited towards her original balance. Garrett Decl. ¶ 28 [Doc. No. 89]; Garrett Decl. Ex. 2 [Doc. No. 89-2].[4] Garrett Decl. ¶ 28, Ex. 2 [Doc. No. 89-2]. Ally's records show no

---

[4] The parties dispute the circumstances surrounding the July 4, 2019 payment. James claims that she was double charged on July 4, 2019, for cash payments made via a MoneyGram. Ally claims that James's originally payments were initially rejected, but then remade, accepted, and processed. Ally MSJ, SUMF ¶ 21 [Doc. No. 92]. A payment history sent to James on July 28, 2021, shows six transactions recorded on July 4, 2019: two payments and one debit for $318

payments from James from August 2019 through October 2019. Garrett Decl. Ex. 2 [Doc. No. 89-2]. On November 18, 2019, and January 3, 2020, James made payments of $350 and $272, respectively. Id. Ally credited $76.91 of the second payment towards "balance due" and the remainder of that payment and the entire November 18, 2019 payment were charged to "Finance Paid." Id. As of November 18, 2019, Ally restricted James's access to her online account. See James MSJ 25 [Doc. No. 76]; see also Garrett Decl. Ex. 9 (August 20, 2021 letter from Ally to the Massachusetts Office of the Attorney General) [Doc. No. 89-9] (conceding online account access restricted as of November 18, 2019).

According to Ally's records, between September 4, 2018, and February 4, 2020, James had 15 scheduled payments of $317.11 due, for a total of $4,756.65. Garrett Decl. Ex. 2 [Doc. No. 89-2]. James paid $3,158.88 of this amount, of which $2,525.74 was charged to "Finance Paid," and $633.28 was applied to her total balance due. Id. Ally's records as of February 4, 2020, show $1,596.88 in overdue payments, and the balance remaining on her loan as $13,101.62. Id.

On February 29, 2020, Ally referred the account to its Asset Recovery Center. Id. Garrett Decl. ¶ 35 [Doc. No. 89]. That same day, Ally issued a notice addressed to James and Jessica Lawless at James's address stating that the account was referred to the Asset Recovery Center for failure to make payments. Garrett Decl. Ex. 7 [Doc. No. 89-7].[5] The notice stated that Ally would not release the title until the full amount owing (listed as $13,324.95) was paid. Id.

On November 2, 2020, Ally sent James a notice offering to settle her account if she paid

---

each (for a net of $318) and two payments and one debit for $451.33 (for a net of $451.33), amounting to a total payment of $769.33. Garrett Decl. Ex. 3 [Doc. No. 89-3]. At the June 13, 2023 hearing, James conceded that she paid $769.33, and that she did not pay that amount twice.

[5] There is no evidence in the record that this notice was sent to James. See Garrett Decl. ¶ 35 [Doc. No. 89] (describing document but not stating that it was sent to James and Lawless).

a lump sum of $8,661.22 within thirty days. Garrett Decl. ¶ 36 [Doc. No. 89]; Garrett Decl. Ex. 8 [Doc. No. 89-8]. At some point, James offered to make a payment of $6,500, and then $8,500, to settle her account, which Ally refused. Scally Aff. 12 [Doc. No. 76-14]; James MSJ 20 [Doc. No. 76].

On July 22, 2021, the vehicle was repossessed from the driveway of James's residence in Hingham, MA by Evergreen Auto Recovery, Inc. ("Evergreen"). James MSJ 8-9 [Doc. No. 76]. James reports that Evergreen[6] did not provide her with any paperwork from Ally. Lawless Aff. 4 [Doc. No. 76-13]. The disputed details regarding the removal of the vehicle are discussed further below.

On July 23, 2021, Ally notified James and Jessica Lawless that it had taken possession of the vehicle, it planned to sell the vehicle at a private sale sometime after August 12, 2021, and James could recover the vehicle by paying the full amount due. Garrett Decl. Ex. 10 [Doc. No. 89-10]. The notice stated that the vehicle was located at Evergreen Auto Recovery in Rhode Island, but that it may be moved to Connecticut for storage. Id. At some point after the repossession, Evergreen moved vehicle from Rhode Island to Connecticut. James MSJ 7 [Doc. No. 76].

Also on July 23, 2021, James called Ally to raise her concerns about the accounting and repossession. Garrett Decl. ¶ 40 [Doc. No. 89]. On July 28, 2021, Ally mailed James a payment history for June 2, 2017, to January 3, 2020, and a late charge history for September 4, 2018, to February 4, 2020, for her account ending in 4851. Garrett Decl. Ex. 3 [Doc. No. 89-3]. On July 28, 2021, James sent at least one "cease-and-desist notice" to Ally for the return of the vehicle.

---

[6] James states that Evergreen would not speak with her despite several attempts until January 13, 2022. James MSJ 7 [Doc. No. 76].

James MSJ 9 [Doc. No. 76]; James MSJ Ex. S [Doc. No. 76-16]; Mot. to Strike Ex. 2, 3 [Doc. No. 94-2]. On July 29, 2021, James called Ally again to raise her concerns, and Ally placed the sale of the vehicle on hold while the accounts were investigated. Garrett Decl. ¶ 40 [Doc. No. 89]; see James MSJ Ex. D [Doc. No. 76-7] (handwritten notation that "[s]he gave me her word" that Ally would not sell the vehicle).

On July 30, 2021, Ally's Executive Customer Relations representative "Bianca" (no last name given) sent James an email acknowledging receipt of James's correspondence and stating that she had attempted to call James. James MSJ Ex. D [Doc. No. 76-7]. On August 6, 2021, James emailed Ally requesting return of the vehicle. James MSJ Ex. D1 [Doc. No. 76-8], Ex. H [Doc. No. 76-12].

On August 20, 2021, Bianca replied to an August 2, 2021 email from the Massachusetts Office of the Attorney General sent on behalf of James. Garrett Decl. Ex. 9, 1 [Doc. No. 89-9]. Ally's response described the contract history, and purportedly enclosed a payment history.[7] Ally noted that if James found a discrepancy between the payment history and her own records, she could contact Bianca directly, including the payment James claims she made via Money Gram and Western Union. Id. Ally noted that the sale date for the repossessed car would be delayed through August 30, 2021, and that James could redeem the vehicle by making the required payment. Ally also stated that in response to James's correspondence, Ally contacted Evergreen about the repossession, and that Evergreen told Ally that Jessica Lawless had provided the keys to the vehicle, and that she had retrieved personal belongings from the vehicle before it was removed. Id. at 2.

---

[7] The copy of the letter to the Attorney General in the record does not have any attachments.

On November 22, 2021, the vehicle was sold at auction for less than the outstanding balance on the account. Garrett Decl. ¶ 43 [Doc. No. 89].

**III.    Plaintiff's <u>Motion to Deny Further Motions</u> [Doc. No. 88], <u>Motion to Strike</u> [Doc. No. 94], <u>Motion for Default Judgment</u> [Doc. No. 95], and <u>Motion to Dismiss with Prejudice in Favor of the Plaintiff</u> [Doc. No. 96]**

The court begins with four motions (other than the summary judgment motion) filed by James which, <u>inter alia</u>, raise issues regarding removal, allege misconduct by Ally and its counsel, and object to certain evidence.

James's <u>Motion to Deny Further Motions</u> [Doc. No. 88] seeks to prevent Ally from filing additional papers based on alleged misconduct resulting in delay. Where the court has previously held that removal was proper and found no support for the allegations of attorney misconduct,[8] the motion is denied for the same reasons. Further, to the extent that James seeks to prevent Ally from filing oppositions to her motions, or a cross-motion for summary judgment, James has offered no sufficient reason to bar Ally from making such filings.

James's <u>Motion to Strike</u> [Doc. No. 94] seeks, <u>inter alia</u>, to strike Ally's "last filing," which the court interprets as seeking to strike the <u>Garrett Declaration</u> [Doc. No. 89] and Exhibits offered by Ally in support of its <u>Motion for Summary Judgment</u> [Doc. No. 91]. James alleges that she did not receive the documents in discovery. Ally responds that it disclosed all documents it relied upon in its summary judgment filings, and that the Garrett Declaration is permissible

---

[8] <u>See</u> Elec. Order [Doc. No. 28] (denying James's <u>Motion to Dismiss</u> [Doc. No. 8], <u>Expedited Motion to Dismiss in Favor of Plaintiff</u> [Doc. No. 17], and <u>Counter-Motion to Dismiss in Favor of the Plaintiff</u> [Doc. No. 22], and concluding, <u>inter alia</u>, that removal was timely); <u>see also</u> Order [Doc. No. 79] (denying James's <u>Motion for Relief in Favor of Plaintiff for Illegal Representation in a Court Proceeding by the Defendants Counsel</u> [Doc. No. 63], <u>Motion to Compel</u> [Doc. No. 66], <u>Motion for Attorney Affidavit</u> [Doc. No. 67], and <u>Motion for Default</u> [Doc. No. 68] to the extent James sought redress for alleged improper removal and attorney misconduct.).

where Ally disclosed in its initial disclosures that Ally's corporate representative may have discoverable information. Opp. to Mot. to Strike 2 [Doc. No. 97].

The court finds no cause to strike the Garrett Declaration or the corresponding exhibits. Although Garrett was not disclosed by name in Ally's initial disclosures under Federal Rule of Civil Procedure 26(a)(1), Ally disclosed that Ally's corporate representatives were likely to have discoverable information, see Ally Initial Disclosures [Doc. No. 25], and Garrett made his declaration as a corporate representative, see Garrett Decl. ¶¶ 2,4 [Doc. No. 89].

James also has not sufficiently demonstrated that she did not receive Ally's documents in discovery. Although James states in her Affidavit [Doc. No. 94-1] that she did not receive the "default letters" during the time her vehicle was repossessed and sold, see Mot. to Strike Ex. 2 (August 2, 2021 letter from the Massachusetts Attorney General to Ally on behalf of James), she does not state that Ally failed to produce them during discovery. Ally claims, and James did not rebut, that all documents used in support of its opposition and cross-motion, which contain Bates-stamping, were produced in discovery. See Mot. for Protective Order 1, fn. 1 [Doc. No. 82]; Ally Opp. to Mot. to Dismiss 3 [Doc. No. 100].[9] Accordingly, James has not shown that Ally did not comply with its discovery obligations.

James's Motion to Default [Doc. No. 95] seeks judgment in James's favor for alleged fraud, coercion, and perjury by Ally's counsel. Specifically, she alleges that Ally and its counsel made fraudulent claims and statements regarding the transfer of car keys to a towing company, a backdated letter to the Attorney General, and engaged in misconduct regarding removal and service. To the extent James contests facts asserted by Ally, the court considers such disputes in

---

[9] To the extent that James argues that she was not properly served with discovery, the court reiterates that Massachusetts law does not require certified mail or that mail be sent from within the state, and that discovery need not be filed on the docket. See Order 4 [Doc. No. 79].

connection with the pending cross-motions for summary judgment. Further, where the court previously denied James's prior Motion for Default [Doc. No. 68], which raised similar issues regarding alleged attorney misconduct and improper removal, the renewed request is denied. See Order [Doc. No. 79].

James's Motion to Dismiss[10] [Doc. No. 96] also seeks judgment in James's favor and attorney discipline based on alleged fraud, perjury, and coercion. Like the motion above, where James disputes factual assertions made by Ally, the court takes notice of the factual disputes and considers them in connection with the pending cross-motions. Further, while James alleges that Ally did not respond to her request for production and/or interrogatories, that allegation is unsupported where the attached requests for documents do show production and Ally states that it was compliant with the court's order instructing further production. See Opp. to Mot. to Dismiss 3 [Doc. No. 100].

Accordingly, James's Motion to Deny Further Motions [Doc. No. 88], Motion to Strike [Doc. No. 94], Motion for Default Judgment [Doc. No. 95], and Motion to Dismiss with Prejudice in Favor of the Plaintiff [Doc. No. 96] are DENIED.

## IV.   Cross-Motions for Summary Judgment

A.   *Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty

---

[10] Although Ally correctly notes that a motion to dismiss is not the proper vehicle for the relief James seeks, in light of James's pro se status, the court construes the motion as one for judgment in her favor.

Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st

Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving

party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied

in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-

moving party's claim or (2) by demonstrating that the non-moving party failed to establish an

essential element of its claim. Id. at 322-23. Once the moving party establishes the absence of a

genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts

demonstrating that a genuine dispute of material fact remains. Anderson, 477 U.S. at 255-56.

The non-moving party cannot oppose a properly supported summary judgment motion by

"rest[ing] on mere allegation[s] or denials of [the] pleadings." Id. at 256. Rather, the non-moving

party must "go beyond the pleadings and by [his or] her own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted). The non-moving

party must demonstrate "through submissions of evidentiary quality, that a trial worthy issue

persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Disputes over facts "that are

irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported

evidence in the light most favorable to the non-movant and draw all reasonable inferences in the

non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility

determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Anderson, 477 U.S. at 255.

The fact that the parties have filed cross motions does not alter these general standards; rather the court reviews each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard, and determines, for each side, the appropriate ruling. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (noting that cross-motions for summary judgment do not "alter the basic Rule 56 standard" but rather require the court "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed").[11]

B.    *Discussion*

James's pleadings appear to assert claims under the Massachusetts Vehicle Retail Installment Sale Act, Mass. Gen. Laws c. 255B, the Massachusetts Consumer Protection Act, Mass. Gen. Laws. c.93A, and several federal statutes, particularly the Fair Debt Collection Practices Act, and for breach of contract.

1.    Federal Claims

To prevail on a Fair Debt Collection Practices Act (FDCPA) claim, 15 U.S.C. §§1692, *et seq.*, a plaintiff must prove "that (1) [s]he was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." Krasnor v. Spaulding L. Off., 675 F. Supp. 2d 208, 211 (D. Mass. 2009). "The FDCPA contains an explicit one-year

---

[11] James requests that the court review all her previous filings, including exhibits, in adjudicating her current Motion for Summary Judgment [Doc. No. 76]. On summary judgment, a party must support its assertions by "citing to particular parts of materials in the record," and "the court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(1)(A) & (3).

statute of limitations: a suit must be filed 'within one year from the date on which the violation occurs.'" <u>Brown v. Bank of Am., Nat., Ass'n</u>, 67 F. Supp. 3d 508, 518 (D. Mass. 2014) (quoting 15 U.S.C. § 1692k(d)).

Assuming, <u>arguendo,</u> that James is able to establish that Ally is a "debt collector" under the FDCPA, any violation taking place prior to October 29, 2020, would be barred by the statute of limitations where James initiated proceeding in Hingham District Court on October 29, 2021. State Court Record 17 [Doc. No. 7].

For events that occurred after October 2020, including the repossession of the vehicle, viewing the record in the light most favorable to James, a reasonable jury could not find that Ally engaged in a prohibited act or omission under the FDCPA. Here, the summary judgment record establishes that Ally had a present right under the RISC to repossess the vehicle where James was in material default. <u>See</u> 15 U.S.C. § 1692f(6)(A) (prohibiting the "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest…"). Further, the record does not indicate that Ally engaged in any conduct to "harass, oppress, or abuse" James in connection with their communications with her or repossession of the vehicle within the meaning of the FDCPA. <u>See</u> 15 U.S.C. § 1692d.

Accordingly, a reasonable jury could not find that Ally engaged in "unfair or unconscionable means to collect or attempt to collect any debt" owed by James. 15 U.S.C. § 1692f; <u>see</u> <u>Espinosa v. Metcalf</u>, 2022 WL 16554726, at *4 (D. Mass. Oct. 31, 2022) (quoting 15 U.S.C. § 1692(a)) ("The FDCPA is a remedial statute enacted to redress 'the use of abusive, deceptive, and unfair debt collection practices.'").

Further, James's additional allegations related to attorney misconduct by Ally's counsel during the course of this litigation, specifically issues with timeliness, removal to federal court, service, and false statements, do not support a claim under the FDCPA. The court has repeatedly held that removal was proper and timely, and that Ally's counsel has complied with its obligations under the local rules. See Elec. Order [Doc. No. 28]; Order [Doc. No. 79].

Finally, James makes claims under four federal statutes —18 U.S.C. § 1306, 12 U.S.C. § 2906, 12 U.S.C. § 2907, and 10 U.S.C. § 921. See Am. Compl. 2 [Doc. No. 51]. As a matter of law, James cannot state a claim under 18 U.S.C. § 1306, which is a criminal statute without a private cause of action. Further, the remaining statutes cannot form the basis for relief where they are inapplicable to the allegations at issue. Specifically, 12 U.S.C. § 2906 involves evaluations for banking facilities, 12 U.S.C. § 2907 involves operations of branch facilities by minorities and women, and 10 U.S.C. § 921 involves crimes in the armed forces.

Accordingly, Ally is entitled to summary judgment as to all claims arising under federal law.

          2.      State Law Claims

             a.      Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, so subject matter jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Instead, the court "'ha[s] an obligation to inquire into [its] subject matter jurisdiction *sua sponte*.'" Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 86 (1st Cir. 2022) (quoting One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013)); see also Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 16 (1st Cir. 2018) ("subject-matter jurisdiction can never be presumed, nor can it be conferred by acquiescence or consent."). When a federal court has federal question

jurisdiction over at least one claim, it may exercise supplemental jurisdiction over pendent claims arising under state law. Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 5 (1st Cir. 2012). "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Here, the court had subject matter jurisdiction over James's state law claims because it had federal question jurisdiction over her federal claims.

If the federal claim is disposed of – as the court has done here – the court does not automatically lose jurisdiction over the pendent state-law claims where they arise from the same nucleus of operative facts. Steward Health Care Sys., 894 F.3d at 19. In such a situation, the court considers several factors—including judicial economy, convenience, fairness, and comity —which often favor declining jurisdiction over the pendent claims. Carnegie-Mellon Univ., 484 U.S. at 350 fn. 7; see Steward Health Care Sys., 894 F.3d at 19 (cautioning against exercising pendent jurisdiction where "the only federal claim has vanished before trial and the remaining state-law claim raises a knotty and unresolved question of state law[.]"). Where a case was originally removed to federal court based on federal question and supplemental jurisdiction, and then the federal claim is dismissed, "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." Carnegie-Mellon Univ., 484 U.S. at 357.

Here, the parties have engaged in substantial briefing of their summary judgment motions. Accordingly, to the extent that the state law claims may all be resolved on summary judgment, judicial economy would favor this court retaining jurisdiction. However, to the extent that a trial before a fact-finder is required on at least some claims, there are no compelling

15

reasons for the court to retain jurisdiction or to address nuances of state law concerning

consumer debt collection. Accordingly, the court briefly examines the remaining state law claims

to determine whether any survive summary judgment.

                b.      Claims Arising Under the Massachusetts Vehicle Retail Installment
                      Sale Act, Mass. Gen. Laws c. 255B.

Under Massachusetts law, the rights and duties of debtors and creditors after a default on

a retail installment contract are governed by the Vehicle Retail Installment Sale Act (RISA),

Mass. Gen. Laws c. 255B, § 20A. See Wilder v. Toyota Fin. Servs. Americas Corp., 764 F.

Supp. 2d 249, 254 (D. Mass. 2011). "The broad purpose of the statute is to require a secured

creditor to provide notice to the debtor that his or her default may result in the secured creditor

bringing an action against the buyer or proceeding against the collateral, and to give the debtor

an opportunity to cure the default by paying the amount in arrears by a certain date." Id. at 255;

see Aguiar v. Santander Consumer USA Inc., 2018 WL 4119684, at *2 (D. Mass. Aug. 29, 2018)

(quoting Mass. Gen. Laws ch. 255B, § 20A) ("A defaulting lessee in a retail installment contract

is granted the right to receive written notice of default and an opportunity to cure before a

creditor may 'proceed against the collateral.'"). The notice must be in writing, be given to the

buyer ten days or more after the default, and clearly state the buyer's rights. Mass. Gen. Laws c.

255B § 20A(c). If a debtor cures a default after an initial notice, the creditor must send a second

notice in connection with a subsequent default. Id. at § 20A(b). However, after a debtor has

cured a default after notice three or more times, a creditor is not required to send further notice in

connection with a subsequent default. Id.

James alleges several violations of RISA, including improper notice of default, restricting

online account access, repossession without consent, lack of notice of repossession to the police,

failure to provide paperwork during repossession, and moving the vehicle from the tow lot after

repossession but prior to sale. Although the court does not address the merits of each argument, review of the summary judgment record indicates that at least two claims arising under RISA, specifically whether Ally complied with its notice requirements and whether it repossessed the car without consent, cannot be resolved on summary judgment, and are more prudently resolved in state court.

The undisputed facts indicate that James was in material default on the RISC by February 2020 in the amount of $1,595.88 and under the terms of the RISC, Ally was entitled to repossess the vehicle. Although James may have been able to again cure the default prior to Ally's acceleration of the full charges, Ally was only obligated to give her such notice under RISA, Mass. Gen. Laws c. 255, § 20A, if it had not previously done so. Ally contends it sent three notices at the beginning of 2019. See Garrett Decl. Exs. 4, 5, 6 [Doc. No. 89-4, 89-5, 89-6]. James denies receiving such notices, however, leaving the issue unresolvable on summary judgment. See James Aff. [Doc. No. 94-1].

Massachusetts law also requires that repossession without a hearing, otherwise known as "self-help," can only be achieved "without use of force, without breach of peace and unless the debtor consents to an entry, at the time of such entry, without entry on property owned by or rented to the debtor." Mass. Gen. Laws c. 255B, § 20B. Entry into the driveway and curtilage of the home requires debtor consent. 11 Mass. Prac., Motor Vehicle Law and Practice § 4:53 (5th ed.). Here, it is undisputed that the vehicle at the time of repossession was located in the condominium lot where James resided, and thus required consent prior to repossession.

However, the parties dispute whether Evergreen, the tow company hired by Ally, received consent prior to the repossession. Ally claims that James's daughter, Jessica Lawless, who was a co-signatory on the RISC, provided Evergreen with the keys to the Vehicle and

17

retrieved her personal belongings, Garrett Decl. ¶ 38 [Doc. No. 89], but that assertion is based solely on hearsay, namely Evergreen's report to Ally. James contests this assertion, see Mot. to Dismiss 3, 10 [Doc. No. 96], but offered no evidence during summary judgment briefing to rebut Ally's claim.[12] James testified under oath at the summary judgment hearing that she was present at the home at the time of repossession, spoke to the tow truck driver and that she did not give consent, see Elec. Clerk's Notes [Doc. No. 104], but did not provide this evidence to Ally during summary judgment briefing. Accordingly, where the fact of consent is disputed, Ally has provided no non-hearsay evidence, and James's evidence was not offered in advance of the summary judgment hearing, the court finds the question of whether James consented to entry on the property a question of fact that cannot be resolved on summary judgment.

c.    Breach of Contract

To state a claim for breach of a written contract, a plaintiff must prove that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach."[13] Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007). Here, neither party disputes that the May 5, 2017 RISC was a binding contract between James and Lawless as co-buyers, and Prime Infiniti as the seller, and that Prime Infiniti assigned the RISC to Ally. James alleges that Ally breached the RISC by repossessing and selling her car, not proving her proper notice and accounting, and double-charging her.

---

[12] James's assertion that Jessica Lawless did not live at the residence at the time, see Mot. for Default Ex 1 [Doc. No. 95-1], does not disprove Ally's claim that she was present when the car was towed. Jessica Lawless's Affidavit [Doc. No. 76-13] is silent on that subject.

[13] The RISC states that "federal law and the law of the state of our address shown on the front of this contract apply to this contract." See Garret Decl. Ex. A [Doc. No. 89-1]. Accordingly, where both the buyer and seller-creditor maintain Massachusetts addresses, in Hingham, MA, and Hanover, MA, respectively, Massachusetts and federal law apply to the RISC.

Similar to the requirements under RISA, the RISC contained a provision that stated, <u>inter alia,</u> "If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle." Garrett Decl. Ex. 1 [Doc. No. 89-1]. Where the question of consent remains unresolved, the court finds that neither party is entitled to summary judgment as to the claims arising under the contract for repossession of the vehicle.

    d.  Claims arising under the Massachusetts Consumer Protection
        Statute, Mass. Gen. Laws. c. 93A, § 9

"To state a claim under the consumer protection statute, [Mass. Gen. Laws] c. 93A, § 9, a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred in the conduct of any trade or commerce; third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." <u>Rafferty v. Merck & Co.</u>, 479 Mass. 141, 161, 92 N.E.3d 1205, 1222 (2018) (internal quotations omitted). Where the court has found that Ally is not entitled to summary judgment on the claims against it arising under RISA, and where a violation of RISA is a violation of c.93A, <u>see</u> Mass. Gen. L. c. 255B § 6, Ally is not entitled to summary judgment on the c.93A claim against it.[14]

---

[14] Ally asserts that James's c.93A claim against it is procedurally barred where "James did not send any written demand to Ally prior to filing suit." Opp. to James's MSJ 13 [Doc. No. 90]. "Before bringing suit under that statute, a plaintiff must mail to the defendant a 'written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon.'" <u>Rodi v. S. New England Sch. Of L.</u>, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Mass. Gen. Laws ch. 93A, § 9(3)). James claims that she notified Ally at "headquarters in Detroit MI consumer arbiters/services" that "this case was going to court between 7/28/21 and 8/30/21." James MSJ 6 [Doc. No. 76]. "The demand letter required under G.L. c. 93A does not require claimants to set forth every specific statutory or regulatory violation alleged, so long as it fairly notifies the prospective respondent of the actions or practices of the respondent and the injury suffered by those actions. … Specificity is required to describe the practices complained of, not the legal basis for the claim." <u>Casavant v. Norwegian Cruise Line Ltd.</u>, 460 Mass. 500,

In sum, where at least three remaining state law claims survive summary judgment and require trial before a fact-finder, the court finds that the relevant factors, including judicial economy, convenience, fairness, and comity, favor declining jurisdiction over the pendent claims. Accordingly, the court finds that remand to the Wareham District Court is appropriate.

**V.    Conclusion**

For the foregoing reasons, Ally's <u>Motion for Summary Judgment</u> [Doc. No. 91] is GRANTED as to the federal claims and is otherwise DENIED.

James's <u>Motion for Summary Judgment</u> [Doc. No. 76], <u>Motion to Strike</u> [Doc. No. 94], <u>Motion for Default Judgment</u> [Doc. No. 95], <u>Motion to Dismiss with Prejudice in Favor of the Plaintiff</u> [Doc. No. 96] and <u>Motion to Deny Further Motions</u> [Doc. No. 88] are DENIED.

The remaining state law claims are remanded to the Wareham District Court for further proceedings.

IT IS SO ORDERED.

Date: July 5, 2023                                                    /s/ Indira Talwani
                                                                                United States District Judge

---

506, 952 N.E.2d 908, 913 (2011). Here, James's c.93A is not conclusively barred where she communicated to Ally her intent to sue, although the sufficiency of the notice is "a close question of state law," that further weighs in favor of remand. <u>See</u> <u>Houlton Citizens' Coal. v. Town of Houlton</u>, 175 F.3d 178, 192 (1st Cir. 1999).